IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BUTTE DIVISION

| | |
|---|---|
| MYRON D. EVENSON,<br><br>               Plaintiff,<br><br>vs.<br><br>LIFE INSURANCE COMPANY<br>OF NORTH AMERICA, CIGNA<br>CORPORATION d/b/a CIGNA<br>GROUP INSURANCE and<br>HOLCIM (US), INC.,<br><br>               Defendants. | CV 10-57-BU-DLC-CSO<br><br>**ORDER and<br>FINDINGS &<br>RECOMMENDATIONS OF U.S.<br>MAGISTRATE JUDGE** |

Plaintiff Myron Evenson ("Evenson") filed this action seeking to recover benefits under an ERISA plan. The following motions are ripe for review:

(1) Evenson's Motion for Summary Judgment (*Court Doc. 32*);

(2) Motion for Summary Judgment, filed by Defendant Life Insurance Company of North America ("LINA") (*Court Doc. 33*);

(3) Motion for Summary Judgment, filed by Defendant Holcim(US), Inc. ("Holcim") (*Court Doc. 38*);

(4) LINA's Motion Relating to Inadvertent Disclosure (*Court Doc. 42*); and

(5) Evenson's Motion to Amend Scheduling Order and for Additional Discovery (*Court Doc. 52*).

Having considered the parties' arguments, the Court enters the following order and findings and recommendations. Because it finds the cross-motions for summary judgment dispositive, the Court addresses them first.

## I.     BACKGROUND

On February 15, 2009, Evenson reported to authorities that his wife, Karen Evenson, was missing. *Administrative Record ("AR") at 284.* On March 29, 2009, Karen Evenson's body was recovered. The coroner ruled that she died from suicide. *AR at 290.*

Evenson, as an employee of Holcim, is a participant in Holcim's Employee Benefits Plan ("Plan"). The Plan is set forth in a document titled: "Plan Document and Summary Plan Description". There is no separate Summary Plan Description. *AR at 111* ("This document is intended to act as both the official Plan document and provide you a summary of the welfare benefits available to you").

Under the Plan, Evenson has coverage for Basic Life/AD&D (Accidental Death & Dismemberment) coverage. He also purchased Voluntary AD&D coverage for himself and his wife. *Court Docs. 35 at 2, ¶¶ 4-5, 40 at 6, ¶ 18.* He is the beneficiary of his wife's life insurance coverage. *Court Doc. 40 at 6, ¶ 20 (citing AR 344-45).*

Because of his wife's death, Evenson submitted claims to LINA in April 2009 for Basic Term Life Insurance and for Voluntary AD&D benefits under the Plan. *AR at 342-43.* LINA paid Evenson $25,000 for the Basic Life benefits, but denied Evenson's claim for accidental death benefits, determining that his wife's death was not accidental and coverage was therefore excluded by LINA's policy. *AR at 302, 326-27.*

In September 2009, Evenson, acting on his own behalf, appealed LINA's denial of accidental death benefits. The basis for his appeal was that he disagreed with LINA's findings that his wife's death resulted from suicide. He stated that he believed that his wife's death by drowning "was by accident and nothing more then [*sic*] that ... but not intentionally by means of suicide." *AR at 278.* His appeal did not suggest that benefits should be paid if suicide was established. He did

not submit any additional information or documentation in support of his appeal.  After review of his appeal, LINA again denied the claim. *AR at 273-75.*  In doing so, it set forth a summary of the evidence, including evidence that the Sheriff's Office, after investigation, determined that the cause of death was suicide by drowning.  *Id. at 274.*

In March 2010, Evenson, through an attorney, again requested review.  In this request, however, he did not dispute that the death resulted from suicide, but rather argued that a conflict exists between the Summary Plan Description and the insurance policy language.  *AR at 101-06.*  LINA again reviewed and ultimately denied the claim.  *AR at 59-61.*

Evenson filed this action against defendants LINA and Holcim. His Complaint states two counts: (1) Count I seeks to recover death benefits for his wife's death and (2) Count II seeks damages against Holcim for breach of its fiduciary duty by "failing to provide a clear explanation of benefits and the circumstances which may result in the denial of benefits."  *Court Doc. 1 at 7-8.*

## A.    The Plan Document and Summary Plan Description

Article I of the Plan states that it "consists of the general terms and conditions contained in this [Plan] and the following benefit programs ... Life and Accidental Death and Dismemberment." *AR at 114*. This Article of the Plan states that LINA, as the insurer, will determine benefits:

> These benefits are provided through insurance purchased from the named insurance company.  For these benefits, only the insurance company or carrier can determine your eligibility for and amount of benefits.  Therefore, the only benefits provided by the Plan for any of these insured benefits are the benefits actually approved and paid by the insurance company or carrier.

*AR at 115*.

The Plan Administrator is Holcim.  *AR at 116*.  The Plan delegates to the insurance carriers and claims administrators, including LINA, authority and responsibility for Plan administration, including processing claims.  *AR at 137, 139*.  The Plan Administrator is granted full discretionary authority to determine eligibility for and the amount of benefits.  *Id*.

The Plan provides that all Plan participants "are entitled to ... examine, without charge, at the office of the Plan Administrator and at

other specified locations, such as the personnel office, all documents governing the Plan, including insurance contracts" and to obtain copies of documents governing the operation of the Plan, including insurance contracts. *AR at 140*.

Article IV of the Plan describes Life and Accidental Death & Dismemberment Benefits. It begins: "The Company provides a variety of Life [and] Accidental Death and Dismemberment (AD&D) ... coverage options (the "Insurance Programs") for eligible Employees and eligible Family Members." *AR at 236*. Participants may purchase "Voluntary AD&D Insurance" for themselves and their family members. *Id.* The term "accidental" is not defined in the Plan. Article IV describes the exclusion here at issue as follows: "No Voluntary AD&D Insurance benefits are payable if your death or loss results from any of the occurrences described below .... • Intentionally self-inflicted injury (actual or attempted) while sane or insane...." *AR at 243*.

The Plan also describes the process for claiming Voluntary AD&D benefits. *AR at 245-57*. It again states that the insurance company shall have the discretion to determine claims:

The Plan Administrator has appointed the Insurance Company as the named fiduciary for adjudicating claims for benefits under the Plan, and for deciding any appeals of denied claims. The Insurance Company shall have the authority, in its discretion, to interpret the terms of the Plan, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact. All decisions made by the Insurance Company shall be final and binding on participants and beneficiaries to the full extent permitted by law.

*AR at 246.*

## B.     The Group Accident Policy

LINA's Group Accident Policy [Policy] was approved and accepted by Holcim. *AR at 7, 97.* The Policy provides that it was "issued in conjunction with an employee welfare benefit plan subject to [ERISA]" and that it is "a Plan document within the meaning of ERISA." *AR at 44.* Like the Plan, the Policy provides that it is available for inspection. *AR at 38* ("This Group Policy will be available for inspection at the Subscriber's office during regular business hours*")*.

The Policy states that "benefits will not be paid for any Covered Injury or Covered Loss which, directly or indirectly, in whole or in part, is caused by or results from ... intentionally self-inflicted Injury, suicide, or any attempt thereat while sane or insane...." *AR at 32.* A

"Covered Accident" is defined as a "sudden, unforeseeable, external event...." *AR at 27.* Evenson acknowledges in his brief that the Policy language "clearly prevents recovery where the insured person commits suicide." *Court Doc. 36 at 9.*

## II.   SUMMARY JUDGMENT MOTIONS

### A.   Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a

reasonable fact-finder to return a verdict for the nonmoving party. *Id.*

Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "A moving party without the ultimate burden of persuasion at trial – usually, but not always, a defendant – has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Id.*

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

To establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586, n.11. The opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita*, 475 U.S. at 587 (quotation omitted).

In resolving a summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts

placed before the Court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citation omitted).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

The specific standards of review to apply in the ERISA context were recently set forth by the Ninth Circuit in *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666 (9th Cir. 2011). Where as here a plan clearly gives the administrator discretion to determine eligibility, courts must review the administrator's decision for abuse of discretion, rather than *de novo. Id. at 673.*

But where an insurance company such as LINA both determines whether an employee is eligible for benefits and pays benefits out of its own pocket, a conflict of interest arises. A reviewing court must then consider this conflict as a factor in determining whether the plan

administrator has abused its discretion in denying benefits. The significance of this factor will depend upon the circumstances of the particular case. It is clear, however, that "weighed as a factor" does not convert abuse-of-discretion into *de novo* review. *Id.* at 674 *(citing Metropolitan Life Insurance Co. v. Glenn,* 554 U.S. 105, 108 (2008)). A plan administrator's decision cannot be disturbed if it is reasonable. *Id.* at 675. The Ninth Circuit explained:

> Reasonableness does not mean that we would make the same decision. We must judge the reasonableness of the plan administrator skeptically where, as here, the administrator has a conflict of interests. Even without the special skepticism we are to apply in cases of conflict of interest, deference to the plan administrator's judgment does not mean that the plan prevails. "Deference" is not a "talismanic word [] that can avoid the process of judgment." The conflict of interest requires additional skepticism because the plan acts as judge in its own cause.

*Id.* (*citing Glenn,* 554 U.S. at 119).

## B. Summary of Parties' Arguments

### 1. Evenson's Arguments

Evenson moves for summary judgment in his favor on his claims against both LINA and Holcim. Evenson asserts that, as a participant and beneficiary of Holcim's employee benefits plan, he is entitled to

recover benefits due to him under the terms of the Plan.  He claims that Defendants wrongfully denied his claim solely on the terms of a LINA policy that was not part of the Plan and was not provided to him at any time prior to his claim for benefits.  He further claims that the LINA policy exclusion upon which Defendants rely to deny the claim contradicts the Plan terms.  As further grounds for his motion, he asserts that Holcim breached its fiduciary duty to him by failing to provide a Plan with a clear explanation of his benefits.

More specifically, Evenson alleges that LINA abused its discretion by failing to review his claim pursuant to the Plan, which is "substantially different than the policy language cited by LINA representatives in repeatedly denying Mr. Evenson's claim." *Court Doc. 36 at 7*.  Evenson argues that the Plan language is more restrictive than the Policy because the Plan only excludes coverage for "your death" by self-inflicted injuries.  Evenson contends that this reference to "your death" must be read to apply the exclusion only to an employee's death by suicide and not to a family member's death by suicide.  *Court Doc. 36 at 10-11.*

### 2. LINA's Arguments

LINA contends that the sole issue before the Court is whether it abused its discretion when it determined that Evenson's wife's death by suicide was excluded from dependent coverage under the policy it issued to Holcim.  Because the Plan vested LINA with discretionary authority to determine eligibility for benefits, LINA asserts that the court must apply the deferential abuse-of-discretion standard of review.

LINA acknowledges that, because it is both the claims administrator and the funding source, the court must weigh evidence of a conflict as a factor in determining whether there is an abuse of discretion.

### 3. Holcim's Arguments

Holcim also contends that LINA did not abuse its discretion and that the denial of benefits was reasonable.  Holcim further argues that the SPD/Plan does not conflict with the policy language and is clear and the language is consistent.  Holcim further argues that even if a conflict did exist, the insurance contract must control in light of the plain meaning and intent of the Plan documents.  *(Court Doc. 39 at 4).*

With respect to Evenson's claim that Holcim breached its

fiduciary duty, Holcim argues that the SPD makes clear that death benefits are payable due to an "accident" only. *Id. at 12-14.* Even assuming a conflict between the SPD and the Policy, Holcim contends that the Plan documents make clear that the actual language of the Policy controls. *Id. at 17.* In sum, Holcim asserts that there is no factual or legal basis for Evenson's claim that non-employee/family members are entitled to greater coverage than employees. *Id. at 21.*

C. **Discussion**

1. **Is Suicide excluded from Voluntary AD&D Coverage for Family Members?**

When reviewing an ERISA plan, courts "apply contract principles derived from state law ... guided by the policies expressed in ERISA and other federal labor laws." *Dupree v. Holman Professional Counseling Centers,* 572 F.3d 1094, 1097 (9th Cir. 2009) *(*citing *Gilliam v. Nevada Power Co.*, 488 F.3d 1189, 1194 (9th Cir. 2007). In Montana, contract documents must be considered and construed together. *See Tin Cup County Water and/or Sewer Dist. v. Garden City Plumbing & Heating, Inc.,* 200 P.3d 60, 67 (Mont. 2008); *Carl Weissman & Sons, Inc. v. St. Paul Fire & Marine Ins. Co.,* 448 P.2d 740, 742 (Mont. 1968).

The Court finds that the Policy and the Plan together constitute the applicable ERISA plan documents. *29 U.S.C. § 1002(1)*. *See also Shaw v. Connecticut General Life Ins. Co.,* 353 F.3d 1276, 1282-84 (11th Cir. 2003) (*citing Grosz-Salomon v. Paul Revere Life Ins. Co.,* 237 F.3d 1154, 1158-61 (9th Cir. 2001)); *Kanne v. Connecticut General Life Ins. Co.,* 867 F.2d 489, 494 (9th Cir. 1988) (holding that the group health insurance policy was part of the ERISA plan). As noted above, both documents recite that they are Plan documents.

In *Parker v. BankAmerica Corp.,* 50 F.3d 757, 763 (9th Cir. 1995), the Ninth Circuit held that ERISA documents that are part of the same transaction and relate to the same subject matter should be read and construed together as one contract. Additionally, plan provisions should be interpreted in an ordinary and popular sense as a person of average intelligence and experience would interpret them. *Harlick v. Blue Shield of Cal.,* 656 F.3d 832, 840 (9th Cir. 2011).

Applying these interpretive guidelines, the Court concludes that LINA did not abuse its discretion in concluding that a family member's death by suicide is excluded from coverage and denying the claim.

LINA's interpretation of the Plan was reasonable when one construes the Plan and the Policy together, even where an ambiguity exists.

Furthermore, the Policy's integration clause provides: "As respects the Insurance Company, it is the sole contract under which benefits are payable by the Insurance Company. Except for this, it shall not be deemed to affect or supersede other Plan documents." *AR at 44.* The Policy "constitutes the entire contract of Insurance" and "[n]o agent has authority to change this Policy or to waive any of its provisions." *AR at 37.* The Ninth Circuit has noted that such integration clauses are intended to keep insureds from binding the insurer to promises made in extraneous documents other than the insurance policies. *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1161 (9th Cir. 2001). Clearly, if the integration clause is to be given effect, there can be no coverage. *Gunn v. Reliance Standard Life Ins. Co.,* 399 Fed. Appx. 147, 150 (9th Cir. 2010).

## 2. <u>Does an Ambiguity in the Plan Require Coverage?</u>

Having found that the Plan does exclude a family member suicide from AD&D coverage, the next issue is whether an ambiguity in the

Plan requires coverage.  The Court finds that it does not for the following reasons.

First, as noted above, the Plan exclusion is to be construed, not as a lawyer would construe it, but as would a person of average intelligence and experience.  Although the term "accidental" is not specifically defined, the Voluntary AD&D coverage is provided only for "accidental death."  *AR at 241*.  It is also clear that no Voluntary AD&D coverage is available for "your death or loss result[ing] from ... Intentionally self-inflicted injury...."  *AR at 243*.  Although the terms "you" and  "your" are sometimes used in the Plan to refer to employees only[1], these terms are also used where they clearly must refer to family members also.[2]  Any confusion could be quickly resolved by referring to the Policy, which the Plan specifies is controlling and which clearly excludes such coverage.  *See also Cigna Corp. v. Amara*, 131 S.Ct. 1866, 1877-78 (2011) (holding that disclosures set forth in ERISA-required

[1]For example, the Plan provides that "you may also purchase coverage for your eligible Family Members."  AR at 242.

[2]For example, "Voluntary AD&D Insurance provides coverage if "you should die or suffer a loss...."  AR at 241

summary plan descriptions could not be enforced as terms of the plan itself). Mr. Evenson apparently believed that coverage for suicide was excluded because his initial *pro se* appeal mentioned no confusion about coverage, but only his belief that his wife did not commit suicide.

Also, there is no evidence that Mr. Evenson relied on the Plan language to his detriment. The evidence before the Court indicates that Evenson did not obtain and review a copy of the Plan until May 2009, several months after his wife died. *AR at 110.* Many courts hold that to prevail on a benefit claim an employee must show reliance upon or prejudice from the faulty Summary Plan Description if it conflicts with the same provision in other plan documents. *Grosz-Salomon,* 237 F.3d at 1162. *See also Zirnhelt v. Michigan Consol. Gas Co,* 526 F.3d 282, 288 (6th Cir. 2008); *Greeley v. Fairview Health Services,* 479 F.3d 612, 614 (8th Cir. 2007); *Heffner v. Blue Cross and Blue Shield of Alabama, Inc.,* 443 F.3d 1330, 1343-44 (11th Cir. 2006); *Clair v. Harris Trust and Sav. Bank,* 190 F.3d 495, 499 (7th Cir. 1999). Here, Evenson has raised no fact issue as to such reliance.

For all the reasons stated above, the Court concludes that

summary judgment for Defendants is proper. The Court has carefully considered the appropriate standard of review here. It has tempered with some skepticism the abuse-of-discretion standard because of LINA's conflict of interest. *See Harlick,* 656 F.3d at 839-40. The evidence before the Court is that LINA promptly investigated and paid the Basic Life claims. It undertook multiple reviews of its denial of AD&D coverage. It consistently (albeit with some minor errors[3]) explained that the reason for the denial of coverage was Ms. Evenson's suicide. The denial was amply supported by the investigative findings, which are not here disputed. There is no evidence of a history of biased claims administration. Proper procedures were followed in denying the claim. Under these circumstances, the Court cannot conclude that LINA abused its discretion. *See Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008).

---

[3]For example, Evenson complains that one letter contains an inaccurate policy number, and another contained a sentence fragment ("No additional information submitted [sic] with your appeal"), and another was inconsistent as to use of capitalization and italics. AR 36 at 19-20.

## III. MOTION to AMEND SCHEDULING ORDER and for ADDITIONAL DISCOVERY

Evenson has moved the Court to amend the scheduling order to allow for additional discovery. He argues that additional discovery is needed "to determine the weight to be given to LINA's conflict of interest in determining whether it abused its discretion." *Court Doc. 52 at 2.* He wishes to conduct limited discovery on the following topics: (1) whether any of LINA's employees or consultants had a financial incentive to deny his claim; (2) what steps LINA has taken to reduce bias and promote accuracy; and (3) any factors or evidence considered by LINA that are not contained in the administrative record. *Id.* Both LINA and Holcim oppose this motion.

The Court will deny this discovery motion because, after undertaking the analysis with respect to the cross-motions for summary judgment, the Court would make the same recommendations on the substantive legal issues even if the Court were to apply a highly skeptical standard of review to LINA's denial of the claim. *See Abatie v. Alta Health & Life Ins. Co.,* 458 F.3d 955, 968-69 (9th Cir. 2006).

## IV.  MOTION FOR LEAVE TO FILE UNDER SEAL

LINA has moved for an order permitting LINA to replace certain pages of an internal document attached to its Statement of Undisputed Facts (*Court Doc. 37-3 at 47-51*).  LINA contends that there was an inadvertent disclosure of privileged documents.

Given the recommendations stated above, the Court finds that this motion is moot.

## V.  CONCLUSIONS

### ORDER

For the reasons stated above, IT IS ORDERED:

1.  Plaintiff's Motion to Amend Scheduling Order and for Additional Discovery (*Court Doc. 52*) is DENIED.

2.  LINA's Motion Relating to Inadvertent Disclosure *(Court Doc. 42)* is DENIED as moot.

### RECOMMENDATIONS

Based on the foregoing, IT IS RECOMMENDED that the Motions for Summary Judgment filed by LINA *(Court Doc. 33)* and Holcim *(Court Doc. 38)* be GRANTED.  It is FURTHER RECOMMENDED that

Evenson's Motion for Summary Judgment *(Court Doc. 32)* be DENIED.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of this Order and Findings and Recommendations of United States Magistrate Judge upon the parties. The parties are advised that, pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

Objections and responses must comply with Local Rule 72.3, effective on January 1, 2012.

DATED this 4th day of January, 2012.

/s/ Carolyn S. Ostby
United States Magistrate Judge